IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Property Tax

SCOTT P. SMITH and SARAH H. SMITH, )
)
Plaintiffs, ) TC-MD 150099N
)
v. )
)
LINCOLN COUNTY ASSESSOR, )
)
Defendant. ) **FINAL DECISION**

This Final Decision incorporates without change the court's Decision, entered

May 11, 2015. The court did not receive a statement of costs and disbursements within 14 days

after its Decision was entered. *See* TCR-MD 16 C(1).

Plaintiffs appeal the real market value of property identified as Account R91629 (subject

property) for the 2014-15 tax year. A trial was held in the Oregon Tax Courtroom in Salem,

Oregon, on June 16, 2015. Plaintiff Sarah H. Smith (Smith) appeared and testified on behalf of

Plaintiffs. CJ Hurtt (Hurtt), appraiser, appeared and testified on behalf of Defendant. Plaintiffs'

Exhibit 1 and Defendant's Exhibit A were each received without objection.

I. STATEMENT OF FACTS

The parties agree that the subject property is a 1,364-square foot house situated on a 0.35-

acre lot in Cutler City, Oregon. (*See* Ptfs' Ex 1 at 2-3; Def's Ex A at 4.) Defendant's records

stated that the subject property was built in 1962, but Plaintiffs asserted that the subject property

"was actually built in 1954 by the parents of Sarah Smith." (Ptfs' Ex 1 at 2.) Smith testified that

the subject property would not meet current building codes. She wrote that the subject property

> "house was pieced together by joining job shacks from the construction of the
> Marion Street Bridge in Salem Oregon. This was not standard construction by
> any stretch of the imagination. This fact should be taken into consideration while
> comparing [the subject] property to others, particularly those constructed post-

FIRM (1975 and after) which were subject to stringent building and flood construction codes put in place at that time."

(*Id.*) Hurtt testified that the subject property is a class 3 house, which means it is a "legal structure" and the county building department has not required that the house be torn down. He testified that he compared the subject property to class 3 and class 4 homes, and he made downward adjustments to sales of class 4 homes. (*See* Def's Ex A at 4.)

Smith testified that there are two distinct bay front areas in Cutler City: the first area, where the subject property is located, is older homes on Drift Creek with lots that are subject to annual winter flooding; the second area is newer vacation homes on Siletz Bay that enjoy a sandy beach and do not experience winter flooding. (*See* Ptfs' Ex 1 at 2, 6, 17, 23-27.) Smith testified that the newer vacation homes on Siletz Bay are not comparable to the older homes on Drift Creek, including the subject property. Hurtt testified that Defendant's office has studied whether sale prices are affected by location in a various flood zones and they have "yet to see a correlation between sales price and flood zone." (Def's Ex A at 3.)

Plaintiffs request a 2014-15 real market value of $127,598. (*See* Ptfs' Ex 1 at 5.) Smith testified that Plaintiffs' requested real market value is based primarily on the sale of a property located four lots away from the subject property. (*See id.* at 5, 7.) She testified that the property is similar in age, view, and topography to the subject property. (*See id.* at 5.) The property is a 1,855-square foot house built in 1946 on 0.55 acres that sold for $198,000 on February 27, 2014. (*Id.*) Smith testified that the property had been on the market for seven years before it sold in an arm's-length transaction. (*See id.*) Hurtt testified that he agreed it was a good sale, but found it to be "somewhat anomalous" compared with other market data. (*See* Def's Ex A at 4.)

The subject property's 2014-15 tax roll real market value was $271,240, and its 2014-15 maximum assessed value was $199,240. (Ptfs' Ex 1 at 8.) The board of property tax appeals

(BOPTA) reduced the subject property's 2014-15 real market value to $179,570. (*Id.*) Smith testified that she agrees with the subject property's improvements real market value of $54,570, but challenges the land real market value, which was reduced by BOPTA from $216,670 to $125,000. (*See id.* at 2, 8.) Smith testified that, based on the land real market values determined by BOPTA, the subject property's land real market value is overstated compared to the property that sold in February 2014 and another neighboring property. (*See id.* at 2, 5.) Smith testified that, based on the BOPTA Orders, she calculated the subject property's land value was reduced to $8.20 per square foot whereas the land value of the comparable sale was reduced to $5.34 per square foot and the land value of the other neighboring property was reduced to $4.79 per square foot. (*See id.*) Smith calculated that the subject property's land real market value would be $73,028 if it were valued at $4.79 per square foot. (*Id.* at 5.) That is the basis for Plaintiffs' requested 2014-15 real market value of $127,598. (*Id.*)

Hurtt testified that Plaintiffs' method for determining the subject property's real market value based on BOPTA adjudicated values is not a recognized appraisal method. (*See* Def's Ex A at 3.) He testified that Plaintiffs relied on only one comparable sale and that is not sufficient evidence because one sale does not make a market. (*See id.*) Hurtt relied on the sales comparison approach to determine the subject property's real market value. (*See id.*) He considered the cost approach, but gave it little weight due to the age of the subject property. (*See id.*) Hurtt found the income approach to be irrelevant in this case. (*See id.*)

Hurtt testified that the sales data available in Cutler City was limited, so he had to search somewhat beyond the subject property's market in terms of time and location to identify a sufficient number of comparable sales. He testified that he used two sales from 2015, but noted that the market was relatively flat in 2014 and the first half of 2015. (*See* Def's Ex A at 4.)

Hurtt identified 13 comparable sales that occurred between December 2011 and April 2015. (*Id.*) He testified that he selected four of those sales as the best comparables based on a variety of factors, but primarily location. (*See id.* (highlighted in yellow).) Hurtt's four best comparable sales were located within 0.5 miles of the subject property and were all "bayfront" properties. (*See id.*) One of Hurtt's four best comparable sales was the February 2014 sale relied upon by Plaintiffs. (*See id.*) The other three sales were all built in the 1990s. (*See id.*)

Hurtt testified that he made adjustments to his comparable sales for differences in class, square feet, effective age, and land size. (*See* Def's Ex A at 4.) The adjusted prices of his comparable sales ranged from $129,322 to $314,497. (*See id.*) The adjusted prices of Hurtt's four best comparable sales ranged from $129,332 to $277,291. (*See id.*) The low end of that range, $129,332, was the adjusted price that Hurtt concluded for the February 2014 sale presented by Plaintiffs. (*See id.*) Hurtt concluded that the subject property's 2014-15 real market value was in the range of $179,570 to $199,000. (*See id.* at 3.)

## II. ANALYSIS

The issue before the court is the real market value of the subject property for the 2014-15 tax year. "Real market value is the standard used throughout the ad valorem statutes except for special assessments." *Richardson v. Clackamas County Assessor* (*Richardson*), TC-MD No 020869D at 4 (Mar 23, 2003). Real market value is defined in ORS 308.205(1), which states:

> "Real market value of all property, real and personal, means the amount in cash that could reasonably be expected to be paid by an informed buyer to an informed seller, each acting without compulsion in an arm's length transaction occurring as of the assessment date for the tax year."[1]

The assessment date for the 2014-15 tax year was January 1, 2014. *See* ORS 308.007; 308.210.

///

---

[1] All references to the Oregon Revised Statutes (ORS) are to 2013.

The real market value of property must be determined in accordance with methods and procedures adopted by the Department of Revenue. *See* ORS 308.205(2). The value of property must be considered using the three value approaches: (1) the cost approach, (2) the sales comparison approach, and (3) the income approach. *See* OAR 150-308.205(A)(2)(a). Although all three approaches may not be applicable in a given case, all three approaches must be considered. *See id.*

Plaintiffs have the burden of proof and must establish their case by a preponderance of the evidence. *See* ORS 305.427. "[P]reponderance of the evidence means the greater weight of evidence, the more convincing evidence." *Feves v. Dept. of Rev.*, 4 OTR 302, 312 (1971). Plaintiffs "must provide competent evidence of the [real market value] of the property." *Woods v. Dept. of Rev.*, 16 OTR 56, 59 (2002). "Competent evidence can include appraisal reports and sales adjusted for time, location, size, quality, and other distinguishing differences, and testimony from licensed professionals such as appraisers, real estate agents, and licensed brokers." *Danielson v. Multnomah County Assessor*, TC-MD 110300D (Mar 13, 2012). If Plaintiffs "evidence is inconclusive or unpersuasive, [Plaintiffs] will have failed to meet the burden of proof." *See Reed v. Dept. of Rev.*, 310 Or 260, 265 (1990). Under ORS 305.412, this court "has jurisdiction to determine the real market value * * * on the basis of the evidence before the court without regard to the values pleaded by the parties."

Plaintiffs in this case relied on one sale of a nearby property and on land real market values adjudicated by BOPTA. Plaintiffs' reliance on BOPTA adjudicated values is not a recognized approach to valuation under OAR 150-308.205(A)(2)(a) and cannot be given any weight in this analysis. Consideration of a comparable sale is appropriate evidence under the sales comparison approach, but the sale must be adjusted for differences in order to compare it to

the subject property. *See* OAR 150-308.205-(A)(2)(c). Moreover, the Oregon Supreme Court has observed that "[u]sually, one sale does not make a market." *Truitt Brothers, Inc. v. Dept. of Rev.*, 302 Or 603, 609, 732 P2d 497 (1987). Plaintiffs have not proven by a preponderance of the evidence that the subject property's real market value was $127,598 as of January 1, 2014.

Although the burden has not shifted "the court has the jurisdiction to determine the real market value or correct valuation on the basis of the evidence before the court, without regard to the value pleaded by the parties." ORS 305.412. Hurtt relied on the sales comparison approach, identifying 13 comparable sales and placing the most weight on his four best comparable sales, including the February 2014 comparable sale identified by Plaintiffs. Hurtt made adjustments to his comparable sales as required by OAR 150-308.205-(A)(2)(c) and concluded that the subject property's real market value was in the range of $179,570 to $199,000.

Plaintiffs challenged the similarity of Hurtt's comparable sales to the subject property, noting that several of the comparable sales were newer than the subject property and located in a more desirable location on the bay. Three of Hurtt's four best comparable sales were built in the 1990s and the court agrees with Plaintiffs that those sales may not be comparable to the subject property, which was built in either 1954 or 1962. Hurtt made adjustments to his comparable sales to account for differences in effective age, but large adjustments may indicate that properties are not comparable. If the court places no weight on the sales of properties built in the 1990s, then the court is left with no evidence of sales located on the bay other than the February 2014 sale relied upon by Plaintiffs. As noted above, one sale does not make a market. The court finds that the real market evidence presented is, therefore, inconclusive.

/ / /

/ / /

III.  CONCLUSION

After careful consideration, the court finds that Plaintiffs have failed to prove by a preponderance of the evidence that the subject property's real market value was $127,598 as of January 1, 2014.  The court further finds that the remaining real market value evidence presented is inconclusive.  The subject property's 2014-15 real market value is $179,570, as ordered by BOPTA.  Now, therefore,

IT IS THE DECISION OF THIS COURT that Plaintiffs' appeal is denied.  The subject property's 2014-15 real market value is $179,570, as ordered by BOPTA.

Dated this ____ day of August 2015.

_____
ALLISON R. BOOMER
MAGISTRATE

*If you want to appeal this Final Decision, file a complaint in the Regular Division of the Oregon Tax Court, by <u>mailing</u> to: 1163 State Street, Salem, OR 97301-2563; or by <u>hand delivery</u> to: Fourth Floor, 1241 State Street, Salem, OR.*

*Your complaint must be submitted within <u>60</u> days after the date of the Final Decision or this Final Decision cannot be changed.  TCR-MD 19 B.*

*This document was filed and entered on August 7, 2015.*